UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOUNDDOG PRODUCTIONS, LLC and THE MOTION PICTURE GROUP, INC.,

        Plaintiffs,

-against-

EMPIRE FILM GROUP, INC., DEAN HAMILTON BORNSTEIN and ERIC PARKINSON,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 09 Civ. 9698 (VM)

**DECLARATION OF DEBORAH KAMPMEIER IN SUPPORT OF PROPOSED ORDER TO BE ENTERED AGAINST EMPIRE FILM GROUP, INC.**

Deborah Kampmeier declares as follows, pursuant to 28 U.S.C. § 1746:

1. I am the president of Hounddog Productions, LLP ("HDP"), one of the Plaintiffs in this action, and am fully familiar with the facts and proceedings herein. I submit this Declaration in support of Plaintiffs' proposed Order to be entered against defaulted Defendant Empire Film Group, Inc. ("EFG").

2. I am the author of the screen play entitled *Hounddog*, and the director and producer of the motion picture based on and incorporating substantial portions of the copyrightable material of the screenplay (hereinafter, "*Hounddog*").

3. I registered a claim to the copyright in and to *Hounddog* with the U.S. Copyright Office, which duly issued a Certificate of Registration therefor bearing registration number PAu-2991325, with an effective date of registration of October 14, 2005. A true and correct copy of the Certificate of Registration is annexed hereto as Exhibit 1.

4. By assignment dated May 1, 2006, I transferred and assigned all of my rights in and to the copyrights in *Hounddog* to HDP. A true and correct copy of this assignment is annexed to hereto as Exhibit 2.

5. By agreement dated July 5, 2006, HDP granted to co-plaintiff the Motion Picture Group, Inc. ("TMPG") foreign and domestic sale rights in *Hounddog*. A true and correct of this agreement is annexed to hereto as Exhibit 3.

6. Plaintiffs thereafter entered into an agreement with Defendant EFG dated as of March 7, 2008 ("the Distribution Agreement"), which granted Empire exclusive distribution rights in *Hounddog*. A true and correct copy of the fully executed Distribution Agreement is annexed hereto as Exhibit 4.

7. Specifically, pursuant to the Distribution Agreement, Plaintiffs granted Empire all media rights in *Hounddog* throughout the territory of the United States and Canada for a term of ten years, including cinematic rights, video rights, pay-per-view rights, pay TV rights, free TV rights and digital streaming rights.

8. In consideration for the media rights granted to EFG, and pursuant to paragraphs 5 through 10 of the Distribution Agreement, EFG agreed, among other things, to:

   a. Expend no less than $2,000,000.00 in direct marketing, promotion and advertising costs for the theatrical release of *Hounddog* (the "Minimum P&A Spend");
   b. An opening weekend launch in no less than 200 theaters;
   c. Provide Plaintiffs, on or before November 30, 2008, with a detailed budget and report of qualifying expenditures comprising the Minimum P&A Spend, together with supporting documentation and proof of payment;
   d. Cause the Theatrical Release of *Hounddog* in no less than 21 specified Initial Markets (including New York, Los Angeles, Chicago, Boston, Philadelphia, Atlanta and Dallas) by no later than November 30, 2008;
   e. Pay Plaintiffs specified shares of the receipts earned from Cinematic, Video, Television, and Internet exploitation, as specified and calculated in ¶ 8 of the Distribution Agreement;

    f. Pay Plaintiffs a Minimum Guarantee of $1,000,000.00 in three installments, with the last payment of $400,000.00 (the "Minimum Guarantee Final Payment") due no later than October 31, 2008;

    g. In addition to all other accounting and payment obligations (and solely until the Minimum Guarantee Final Payment is made), to account to Plaintiffs on a monthly basis for all gross receipts received by Empire, accompanied by payment to Plaintiffs of 50% of all such gross receipts received; and,

    h. Provide Plaintiff with Quarterly accountings, accompanied by all applicable payments due Plaintiffs, throughout the term of the Distribution Agreement.

9. In addition, pursuant to ¶ 9(D) of the Distribution Agreement, Plaintiffs were granted the right to revoke all of EFGs distribution rights in the event that the Minimum Guarantee Final Payment was not paid on or before October 31, 2008. *See* Exhibit 4, ¶ 9(D).

10. Pursuant to ¶ 10(C) of the Distribution Agreement, Plaintiffs were further entitled to terminate the Distribution Agreement in the event any payments required by the Distribution Agreement were not timely made. *See* Exhibit 4, ¶ 10(C).

11. EFG failed to make the Minimum Guarantee Final Payment by October 31, 2008, and EFG has not made the Minimum Guarantee Final Payment at any time thereafter.

12. By letter dated November 4, 2008, Plaintiffs, through counsel, provided notice to EFG, pursuant to ¶ 9(D) of the Distribution Agreement, of their election to revoke all distribution rights theretofore granted to Empire under the Distribution Agreement due to EFG's failure to make the Minimum Guarantee Final Payment. A true and correct copy of the November 4 notice letter, which I authorized to be sent, is annexed hereto as Exhibit 5.

13. Despite the termination of all of its rights to continue to manufacture, distribute, exhibit and otherwise exploit *Hounddog*, EFG continued to exploit *Hounddog* after November 4, 2008, and continues to do so to this day. For example, on January 8, 2009, I received a copy, via email, of a January 7, 2009 press release issued by EFG touting its release of Houndog in DVD

3

and Blu-Ray format. A true and correct copy of the email I received is annexed hereto as Exhibit 6.

14. I also received a letter dated October 26, 2009 from Eric Parkinson, on behalf of EFG, concerning the upcoming release of *Hounddog* in Blu-Ray format. A true and correct copy of the October 26, 2009 letter that I received is annexed hereto as Exhibit 7.

15. On or about October 12, 2009, EFG rendered a purported "accounting" to Plaintiffs, setting forth Empire's alleged revenue and expenses associated with *Hounddog* through September 30, 2009. A true and correct of this accounting, which I received from EFG, is annexed hereto as Exhibit 8.

16. This accounting confirmed numerous breaches by EFG of the Distribution Agreement, including that:

   a. EFG failed to make the Minimum Guarantee Final Payment of $400,000 (*see* Exhibit 6, p. 6 (acknowledging that only $600,000 of the minimum guarantee payment of $1,000,000.00 had been paid);

   b. EFG expended no more than $888,742.18 of the required $2,000,000.00 Minimum P&A Spend by November 30, 2008, or at any time thereafter, as required by the Distribution Agreement; and,

   c. EFG failed to launch *Hounddog* in 200 theaters and failed to release the film in many of the 21 Initial Markets required by the Distribution Agreement.

17. The October 12, 2009 accounting also reflects that EFG received no less than $109,710.09 from its exploitation of *Hounddog* through September 30, 2009. *See* Exhibit 8, p.2 (line item in "Royalty Balance" section reflecting "Empire Applicable Fee" of $109,710.29 for its "distribution fee," ***in addition to*** its recoupment of its costs). The accounting further reflects that through September 30, 2009, EFG's gross revenues actually received from exploitation of the film was no less than $438,841.14, with the vast majority of this income attributed to exploitation occurring after the termination of EFG's rights to distribute *Hounddog*. See, Exhibit

4

**8**, p. 2, (line items in "Revenues" section reflecting that only $13,319.64 of revenue was attributable to *pre-termination* Theatrical Receipts. All other avenues of exploitation, e.g. DVD sales and income from cable, and on-demand television exhibitions, did not commence until well after November 4, 2008, the date of termination of the Distribution Agreement).

I declare, under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Dated: New York, New York
    July 22, 2011

_____
DEBORAH KAMPMEIER