USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/16/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

HOUNDDOG PRODUCTIONS, L.L.C. and            :
THE MOTION PICTURE GROUP, INC.,             :

        Plaintiffs,                              :

                        :

    -against-                                   :

EMPIRE FILM GROUP, INC., et al.,            :

        Defendants.                              :

---------------------------------------------------------------X

REPORT AND
RECOMMENDATION

09 Civ. 9698 (VM) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Victor Marrero, United States District Judge:**

On March 2, 2011, the Court granted the motion of Plaintiffs Hounddog Productions,

LLC and The Motion Picture Group, Inc. ("Plaintiffs") for a default judgment against Defendant

Empire Film Group ("Empire" or "Defendant"). On July 19, 2011, the Court denied Empire's

request to vacate the default and reaffirmed the entry of default against Empire. The Court then

referred the matter to me for an inquest to determine damages. For the reasons stated below, I

recommend that the Court enter judgment for Plaintiffs against Empire in the amount of

$400,000 in compensatory damages plus pre-judgment interest at a rate of nine percent per

annum calculated by the Clerk of the Court as set forth in Parts II.C.1 and 2, infra, and $150,000

in statutory damages for Empire's willful copyright infringement as set forth in Part II.D.1, infra.

I further recommend that the Court issue a declaration that the Distribution Agreement between

Plaintiffs and Empire is terminated, see Part II.C.3, infra, order injunctive relief as set forth in

Parts II.D.2 and 3, infra, and direct Plaintiffs to submit records to determine reasonable

attorneys' fees and costs, see Part II.D.4, infra.

USDC SDNY
DATE SCANNED_____9/16/11_____

## I.   BACKGROUND

### A. Established Facts as a Result of Empire's Default

It is well-settled that in light of Empire's default, Plaintiffs' allegations, with the exception of those related to damages, are accepted as true.  See, e.g., Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993).  Accordingly, the following facts are established as a result of Empire's default:

Plaintiffs brought this action against Defendants Empire, Dean Hamilton Bornstein, and Eric Parkinson (together, "Defendants") for breach of contract in connection with the promotion, marketing, and distribution of the motion picture entitled *Hounddog*, and for willful copyright infringement following the revocation and termination of Defendants' distribution rights.  (See Complaint dated November 20, 2009 ¶ 1 ("Compl.") (Dkt. No. 1)).  Deborah Kampmeier ("Kampmeier") wrote, directed, and produced the film, and subsequently transferred her rights to the film's copyright to Plaintiff Hounddog Productions, LLC, a film production company, which in turn granted domestic and foreign sale rights to Plaintiff The Motion Picture Film Group, Inc., another production company.  (Compl. ¶¶ 18-21).

*Hounddog* generated significant press coverage throughout 2006 and 2007.  (Compl. ¶ 24).  Due to the nature of its subject matter, the film was embroiled in a public controversy arising from accusations of obscenity and sexual exploitation.  (Compl. ¶ 25).  This exposure led to significant public interest in the film, capped by *Hounddog*'s feature at the 2007 Sundance Film Festival.  (Compl. ¶ 26).  Soon after these developments, Plaintiffs entered into an agreement with Empire dated March 7, 2008 (the "Agreement"), which granted it exclusive

distribution rights for the film. (Compl. ¶ 27; Declaration of Deborah Kampmeier dated July 22, 2011 in Support of Proposed Order to be Entered Against Empire Film Group, Inc. ("Kampmeier Decl."), Ex. 4 (Dkt. No. 51)). Under the Agreement, Plaintiffs granted Empire all media rights in *Hounddog* in the United States for ten years, including cinematic rights, video rights, pay-per-view rights, pay TV rights, free TV rights, and Digital Streaming rights. (Compl. ¶ 28; Kampmeier Decl., Ex. 4). In exchange, Empire agreed, among other things, to spend at least $2,000,000 to market and promote the film, launch it in at least 200 theaters on opening weekend, release the film in at least 21 specified initial markets, make monthly payments to Plaintiffs of 50% of all gross receipts received by Empire, and pay Plaintiffs a minimum guarantee payment of $1,000,000 in three installments, with the last payment of $400,000 (the "Minimum Guarantee Final Payment") due no later than October 31, 2008. (Compl. ¶ 29; Kampmeier Decl., Ex. 4). The Agreement also granted Plaintiffs the right to revoke all of Empire's distribution rights in the event that the Minimum Guarantee Final Payment was not paid by October 31, 2008 and permitted Plaintiffs to terminate the Agreement if any required payments were not timely made. (Compl. ¶¶ 30-31; Kampmeier Decl., Ex. 4).

Empire failed to meet its obligations under the Agreement. Among other failures, Empire spent only $889,000 to market and promote the film, well below the contractual minimum of $2,000,000. (Compl. ¶¶ 34-35, 44). Empire also failed to make monthly payments of 50% of all gross receipts, or make the $400,000 Minimum Guarantee Final Payment to Plaintiffs. (Compl. ¶¶ 32-33, 36-38). In light of Empire's failure to make the Minimum Guarantee Final Payment, Plaintiffs gave notice to Empire on November 4, 2008 that they sought to revoke all distribution rights granted to Empire under the Agreement. (Compl. ¶ 39;

3

Kampmeier Decl., Ex. 5).  Despite Plaintiffs' revocation of Empire's distribution rights, Empire continued to promote and distribute *Hounddog*, including profitting from sales of *Hounddog* on DVD, Blu-ray, and Video-on-Demand formats.  (Compl. ¶¶ 40-43; Kampmeier Decl., Exs. 6-7; Declaration of Jonathan J. Ross dated July 26, 2011 in Support of Proposed Order to be Entered Against Empire Film Group, Inc. ("Ross Decl."), Exs. 1-4 (Dkt. No. 52)).

### B. Procedural History

Plaintiffs assert two causes of action.  The first is for willful copyright infringement arising from Defendants' continuing infringement of Plaintiffs' copyright in, and distribution of, *Hounddog*, in violation of 17 U.S.C. § 106.  The second is for Defendants' material breach of the Agreement.  (Compl. ¶¶ 45-50, 54-56).  Defendants, represented by counsel, filed an Answer on February 12, 2010.  (Dkt. No. 10).  While attempting to resolve a discovery dispute, counsel for Defendants moved to withdraw under Local Rule 1.4.  (Dkt. No. 24).  By Order dated September 10, 2010, I granted the motion and directed Empire, as a corporate party, to cause an appearance of counsel by October 10, 2010.  (Dkt. No. 26).  Empire failed to timely retain counsel, prompting Plaintiffs to move to strike Defendants' Answer and for entry of a default judgment.

On February 7, 2011, I issued a Report and Recommendation to the Honorable Victor Marrero, recommending that as to Empire, the Court grant the motion and enter default under Rule 55(a), following which the Court order an inquest to determine the amount of damages.  On March 2, 2011, the Court adopted the recommendations of the Report in their entirety and ordered Plaintiffs to submit documentation and a proposed order to determine damages as to Empire.  See Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 767 F. Supp. 2d 480 (S.D.N.Y. 2011) (the "Default Order") (Dkt. No. 34).  Plaintiffs submitted documentation and a proposed

order in support of their claim on April 1, 2011.  (Dkt. No. 37).  By Order dated July 12, 2011, I directed Plaintiffs to re-submit their documentation with proper authentication.  (Dkt. No. 43).

By letter dated June 29, 2011, Empire, having retained new counsel, sought permission to vacate the Default Order.  (See Empire's June 29 Letter (Dkt. No. 42)).  Judge Marrero denied Empire's request on July 19, 2011, and reaffirmed his entry of default against Empire.  (See Order dated July 19, 2011 (Dkt. No. 44)).  By letter dated July 22, 2011, counsel for Empire requested a hearing on the issue of damages.  (See Empire's July 22 Letter (Dkt. No. 49)).  Judge Marrero referred this request to me in conjunction with the prior referral to determine damages. (Dkt. No. 48).  On July 26, 2011, Plaintiffs filed documentation and a proposed order as to the amount of damages and relief to be entered against Empire.  (Dkt. Nos. 50-52).  Empire filed an opposition on August 10, 2011, and Plaintiffs filed a reply on August 17, 2011.  (Dkt. Nos. 55, 56).  On September 2, 2011, at the direction of the Court, Plaintiffs filed a supplemental reply specifically addressing whether Hounddog Productions, LLC is a proper party to this action. (Dkt. No. 59).

## II.    DISCUSSION

### A. Legal Standard

Since the Court previously granted a motion for a default judgment in this case, the threshold issue is whether the Court should grant Empire's request to hold a hearing to determine damages.  Under Rule 55 of the Federal Rules of Civil Procedure, a court "may conduct hearings . . . to determine the amount of damages."  Fed. R. Civ. P. 55(b)(2).  The Second Circuit has held that a court is not required to hold a hearing where it has "'ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace

Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs.,
Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  In lieu of a hearing, courts may rely "on detailed affidavits
or documentary evidence . . . to evaluate the proposed sum."  Fustok, 873 F.2d at 40.  Compare
Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) (ordering remand where district
court did not hold hearing and "determined damages with the aid of a single affidavit only
partially based on real numbers") with Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508
(2d Cir. 1991) (no hearing necessary where district judge was "inundated with affidavits,
evidence, and oral presentations").  "Rule 55(b)(2) and relevant case law give district judges
much discretion in determining when it is necessary and proper to hold an inquest on damages."
Tamarin, 13 F.3d at 54 (internal quotation marks omitted).

### B.  No Hearing Is Required

Plaintiffs bear the burden of establishing their entitlement to recovery and thus must
substantiate their claims with evidence to prove the extent of their damages.  See Greyhound
Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v.
Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).  To meet that burden, Plaintiffs have filed a
memorandum of law, a proposed order, two affidavits, and 13 exhibits seeking compensatory
and statutory damages from Empire as well as injunctive relief.  (See Plaintiffs' Re-Submission
in Support of Proposed Order to be Entered Against Empire Film Group, Inc. ("Pl. Submission")
(Dkt. No. 50); Plaintiffs' Proposed Order, attached as Exhibit 1 to Plaintiffs' Re-Submission
("Proposed Order") (Dkt. No. 50-1); Kampmeier Decl.; Ross Decl.).  Plaintiffs' damages request
comports with the requirements of Rule 54(c) of the Federal Rules of Civil Procedure, as it does
not exceed the demand clause in the Complaint.  See Fed. R. Civ. P. 54(c) ("A default judgment

must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); <u>Silge v. Merz</u>, 510 F.3d 157, 160 (2d Cir. 2007) (damages arising from default judgment are limited to those in "demand clause" of complaint).

In response to Plaintiffs' damages submissions, Empire has filed its own affidavits and exhibits, requesting that the Court hold a hearing to determine damages. (<u>See</u> Declaration of Eliot F. Bloom dated August 10, 2011 in Opposition to Plaintiffs' Damages Submission ("Bloom Decl.") (Dkt. No. 55); Declaration of James Townsend dated August 10, 2011 ("Townsend Decl.") (Dkt. No. 55-1)). Empire's response supplemented its July 22 letter, which requested that the Court hold a hearing on damages. At the outset, Empire asserts that Hounddog Productions, LLC is not a proper party to this action. (Bloom Decl. ¶ 2 n.1). Empire argues that the correct party is "Hounddog, LLC," whose name appears on "all film and video copies and packaging" and on the Distribution Agreement with Empire. (<u>Id.</u>). James Townsend, who is described as Empire's "President of Production and Corporate Secretary," affirms that he "do[es] not know who Hounddog Productions, LLC is, and [that] Empire does not and has never had an agreement with a party with that name." (Townsend Decl. ¶ 2). Plaintiffs' suit in the name of Hounddog Productions, LLC cannot be a mere error, Townsend argues, because Empire's application for a "mortgage of copyright" was rejected on account of the discrepancy in name. (Townsend Decl. ¶ 6).

Empire's arguments are unpersuasive. As a threshold matter, Empire's objections should have been raised at an earlier stage in the litigation, namely, at any time before Empire defaulted. Now having raised these arguments after its default, Empire nevertheless fails to offer any specific evidence to support its position. For example, Empire has not submitted any examples

of packaging materials that reflect the name "Hounddog, LLC," or any evidence that a company with that name even exists. Despite its allegations, Townsend's declaration does not attach any evidence of Empire's alleged application for a "mortgage of copyright." By contrast, to support its position that Hounddog Productions, LLC is in fact the proper party, Plaintiffs have submitted a licensing agreement and a copy of a check reflecting the name Hounddog Productions, LLC. (See Declaration of Jonathan J. Ross dated September 2, 2011 in Further Support of Proposed Order to be Entered Against Defendant Empire Film Group, Inc. ("Second Ross Decl."), Ex. 5). As for the appearance of the name "Hounddog, LLC" in the Agreement and on other internal documents, Plaintiffs' evidence supports the theory of a "scrivener's error," or clerical oversight. Notwithstanding the listing of "Hounddog, LLC" as a party to the contract, the Agreement is signed by Kampmeier, who submitted an affidavit stating that she is the president of Hounddog Productions, LLC. (Kampmeier Decl. ¶ 1). Kampmeier transferred her rights to the film to Hounddog Productions, LLC on May 1, 2006, prior to signing the March 7, 2008 Agreement, which in turn granted distribution rights to Empire. (Id. ¶ 4, Ex. 2). The sequence of events, as demonstrated by Plaintiffs' documentary evidence, indicates that Hounddog Productions, LLC, not "Hounddog, LLC," entered into the Distribution Agreement with Empire. Moreover, as Plaintiffs argue in their supplemental reply, there is no record of any active legal entity with the name "Hounddog, LLC." (Pl. Submission ¶ 3).

Empire also seeks to question, among other things, whether Plaintiff The Motion Picture Group, Inc. still exists, whether Plaintiffs satisfied their contractual obligations, whether Plaintiffs waived their right to obtain payment under the contract, and whether Plaintiffs' actions caused additional revenue loss. (See Bloom Decl. ¶¶ 4-7; Townsend Decl. ¶¶ 3, 5). These

arguments, however, do not dispute Plaintiffs' proposed damages.  By virtue of its litigation

inaction and subsequent default, Empire has lost its opportunity to challenge Plaintiffs'

allegations in the Complaint, which, with the exception of those relating to damages, have been

accepted as true.  Moreover, Empire's arguments regarding Plaintiffs' failure to meet certain

contractual requirements were considered, and rejected, by Judge Marrero when he denied

Empire's request to move to vacate the Default Order.  (See Empire's June 29 Letter at 2-3;

Order dated July 19, 2011).  Empire's submission, therefore, fails to address any issues

concerning Plaintiffs' request for compensatory and statutory damages, and injunctive relief.

Accordingly, because Plaintiffs' submissions provide an adequate basis for the damages sought

in the default judgment, no hearing is required.  See Tamarin, 13 F.3d at 54.

### C. Breach of Contract Claim

Plaintiffs seek a compensatory damage award of $400,000, which represents the

Minimum Guarantee Final Payment described in the Agreement, plus pre-judgment interest at a

rate of nine percent per annum.  (Pl. Submission ¶ 25).  Plaintiffs also seek a declaration that the

Agreement was terminated effective November 4, 2008.

### 1. Contract Damages

Under New York law, which governs Plaintiffs' breach of contract claim under

supplemental jurisdiction, "a successful plaintiff in a breach of contract action is entitled to

damages in the 'amount necessary to put the plaintiff in the same economic position he would

have been in had the defendant fulfilled his contract.'"  Scholastic, Inc. v. Snap TV, Inc., No. 09

Civ. 4349 (GBD) (GWG), 2011 WL 1330246, at *3 (S.D.N.Y. Apr. 8, 2011) (quoting Indu

Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995)); accord Merrill Lynch & Co.,

Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007) ("A party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms."). Where, as here, "the breach of contract was a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest." Scholastic, Inc, 2011 WL 1330246, at *3 (citing House of Diamonds v. Borgioni, LLC, 737 F. Supp. 2d 162, 172 (S.D.N.Y. 2010)); accord Bank v. Ho Seo, No. 06 Civ. 15445 (LTS) (RLE), 2009 WL 5341672, at *3 (S.D.N.Y. Dec. 16, 2009) (citation omitted).

Here, Empire failed to make the Minimum Guarantee Final Payment of $400,000 to Plaintiffs, and concedes as much. (Pl. Submission ¶ 24; Bloom Decl. ¶¶ 3, 5-6, 9; Townsend Decl. ¶¶ 4-5). Had the contract between Plaintiffs and Empire been fulfilled according to its terms, Plaintiffs would have received the $400,000 payment. Accordingly, an award in this amount will put Plaintiffs in the same economic position they would have been in had Empire met its obligations. Plaintiffs are thus entitled to compensatory damages in the amount of $400,000.

### 2. Pre-Judgment Interest

"[A] plaintiff who prevails on a claim for breach of contract is entitled to pre[-]judgment interest as a matter of right." U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991) (citing N.Y. Civil Practice Law and Rules ("C.P.L.R.") §§ 5001 and 5002). Section 5001(a) of the C.P.L.R. provides, in part, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . ." C.P.L.R. § 5001(a). Section 5001(b) further provides that "[i]nterest shall be computed from the earliest ascertainable date the cause

of action existed . . . ." C.P.L.R. § 5001(b).  In New York, the statutory rate for pre-judgment

interest in a breach of contract action is nine percent per year.  See C.P.L.R. § 5004.

Plaintiffs are thus entitled to interest on $400,000 computed from the date the Minimum

Guarantee Final Payment came due—October 31, 2008—through the date of the entry of

judgment against Empire for its breach of the Agreement.

### 3. Declaration that Agreement is Terminated

It is well-established under New York law that a contract should be interpreted "to give

effect to the expressed intentions of the parties."  Klos v. Polskie Linie Lotnicze, 133 F.3d 164,

168 (2d Cir. 1997).  "When an agreement is unambiguous on its face, it must be enforced

according to the plain meaning of its terms."  Lockheed Martin Corp. v. Retail Holdings, N.V.,

639 F.3d 63, 69 (2d Cir. 2011) (citing South Rd. Assocs., LLC v. Int'l Bus. Machs. Corp., 793

N.Y.S.2d 835, 838-39 (2005)).  A contract is unambiguous where the language has a definite and

precise meaning as to which there can be no reasonable basis for a difference of opinion.  White

v. Cont'l Cas. Co., 848 N.Y.S.2d 603, 605 (2007).

Paragraph 10(c) of the Agreement provides that Plaintiffs may terminate the Agreement

"in the event [Empire] fails to timely pay any amounts . . . as and when due."  (Kampmeier

Decl., Ex. 4 at P-0035).  This contractual term is unambiguous.  By virtue of Empire's default,

the Court may accept Plaintiffs' allegations that Empire has not made payments required under

the Agreement, including monthly payments of 50% of gross receipts and the Minimum

Guarantee Final Payment.  (Compl. ¶ 37).  Under the terms of the Agreement, Empire's failure to

pay these amounts permitted Plaintiffs to terminate the Agreement.  Accordingly, Plaintiffs were

entitled to terminate the Agreement with Empire on November 4, 2008.  I recommend that the

Court hereby declare the Agreement between Plaintiffs and Empire to have been validly terminated on November 4, 2008.

### D. Copyright Infringement Claim

Under the Copyright Act, Plaintiffs seek the following remedies at law and equity: (1) a statutory damages award of $150,000, (2) the entry of a permanent injunction against any further infringement by Empire, (3) the disposition of infringing articles in Empire's possession or control, and (4) an award of costs and attorneys' fees. (Pl. Submission ¶ 26).

#### 1. Statutory Damages

Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, . . . or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Plaintiffs have elected to recover statutory damages in lieu of actual damages for Empire's infringement. Under Section 504(c) of the Copyright Act, Plaintiffs can recover not less than $750 or more than $30,000 with respect to any one copyrighted work. 17 U.S.C. § 504(c)(1). To determine the amount of statutory damages for copyright infringement, "courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010).

A court can increase the award of statutory damages up to $150,000 if the infringement was willful. 17 U.S.C. § 504(c)(2). An infringement is willful if "the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility."

Hamil Am., Inc. v. GFI, 193 F.3d 92, 97 (2d Cir. 1999) (citation omitted); see also N.A.S.

Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992).  Courts frequently infer

willfulness where a defendant defaults.  See, e.g., Nature's Enters., Inc. v. Pearson, No. 08 Civ.

8549 (JGK) (THK), 2010 WL 447377, at *7 (S.D.N.Y. Feb. 9, 2010); Burberry Ltd. v. Euro

Moda, Inc., No. 08 Civ. 5781 (CM) (AJP), 2009 WL 4432678, at *3 (S.D.N.Y. Dec. 4, 2009).

Where a defendant has acted willfully, "a statutory award should incorporate not only a

compensatory, but also a punitive component to discourage further wrongdoing by the

defendants and others."  Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504

(S.D.N.Y. 2009).

 Here, Plaintiffs seek the maximum statutory damages award for willful infringement,

$150,000 for their one copyrighted work, in lieu of actual damages.  While the record before the

Court is limited to select factors—profits earned, willfulness, and deterrent effect—the Court

should find that Empire's actions were willful and that a statutory damages award of $150,000 is

appropriate.  Plaintiffs justify their statutory damages request by referring to a royalty and

activity report from Empire dated October 12, 2009.  According to the report, Empire has earned

revenues of $438,841.14 through September 30, 2009.  (Kampmeier Decl., Ex. 8 at P-0176).

Based on this report, Plaintiffs assert that Empire has earned more than $100,000 in profit.  (Pl.

Submission ¶ 35; Kampmeier Decl., Ex. 11).  Plaintiffs further contend that Empire has reaped

additional profits before and after September 30, 2009, given that Empire continues to retain all

income generated from its ongoing distribution of the film.  (Ross Decl. ¶ 8, Ex. 4).

 The evidence proffered by Plaintiffs also supports a finding that Empire's unauthorized

distribution of *Hounddog* and resulting copyright infringement is willful.  Empire received notice

on November 4, 2008 that Plaintiffs sought to terminate "any and all distribution rights granted

to Empire under the Agreement." (Kampmeier Decl., Ex. 5 at P-0143). Despite the notice of

revocation, Empire continued to promote and distribute the film throughout 2009. In January

2009, Eric Parkinson, CEO of Distribution for Empire, was quoted in a press release promoting

the film's DVD release. (Kampmeier Decl., Ex. 6 at P-0147). In its "Amended and Restated

Quarterly Company Information and Disclosure Statement" dated September 18, 2009, Empire

includes information on *Hounddog* under a section entitled "Current Release Activities." The

report states that Empire has generated more than $750,000 in DVD orders for the film, with an

additional $900,000 in DVD, Blu-ray, and Video-on-Demand sales "anticipated over the next

year." (Ross Decl., Ex. 1 at P-0230). Empire's royalty and activity report from October 2009

includes sales figures from "inception of release to Sept. 30, 2009." (Kampmeier Decl., Ex. 11

at P-0176). Based on this evidence, it is apparent that Empire has continued to distribute

*Hounddog* well after receiving notice that it no longer had distribution rights. Given Empire's

ongoing unauthorized distribution of the film, a statutory damages award to Plaintiffs may also

have a deterrent effect on Empire's future copyright infringement. Finally, Empire's willingness

to default indicates willfulness. For these reasons, the Court should therefore award Plaintiffs

statutory damages of $150,000.

### 2. Entry of Permanent Injunction

Pursuant to 17 U.S.C. § 502, Plaintiffs also seek the entry of a permanent injunction

against Empire and its affiliates "from copying, reproducing, distributing, exhibiting, or

performing, or otherwise infringing upon Plaintiffs' copyrights" in the motion picture.

(Proposed Order at 2). "A court may issue an injunction on a motion for default judgment

14

provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Pitbull Prods., Inc. v. Universal Netmedia, Inc., No. 07 Civ. 1784 (RMB) (GWG), 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007).  Under Section 502(a) of the Copyright Act, the Court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  The first prong of the inquiry is therefore satisfied.

To meet the prerequisites for the issuance of an injunction, Plaintiffs must demonstrate "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [P]laintiff[s] and [Empire], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (holding that eBay applies with equal force to preliminary injunctions issued for copyright infringement); Pearson Educ., Inc. v. Vergara, No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sep. 27, 2010) (applying eBay test to issue permanent injunction in inquest on damages following default).

Here, Plaintiffs have demonstrated that they have suffered irreparable injury.  "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer."  Salinger, 607 F.3d at 81.  Plaintiffs contend that Empire's failure to meet the minimum theater and initial market requirements, as stipulated in the Agreement, caused substantial damage to the potential revenues from the release and distribution of *Hounddog*.  (Compl. ¶ 38).  Plaintiffs,

pointing to the significant press coverage and public controversy surrounding the film, argue that Empire's failure resulted in deflated overall revenue. (Id.). The Agreement would have allowed Plaintiffs to capitalize on the public's interest in the film. This lost opportunity is, by its nature, irreparable.

Plaintiffs have also established that any remedies available at law are inadequate to compensate for their injuries. "A plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue infringing its copyright(s)." Pearson Educ., Inc., 2010 WL 3744033, at *4 (citation and quotation omitted). Here, there is no evidence to suggest that Empire has stopped or will stop marketing and distributing Hounddog. Plaintiffs' evidentiary submissions—which included a press release, correspondence, advertising, and financial statements—lead to the conclusion that Empire will continue to manufacture and distribute the film, despite its failure to fulfill its obligations under the Agreement. The Court also infers from Empire's default that it is willing to continue its infringement. See id. Given the significant threat of future infringement, Plaintiffs cannot be compensated with monetary relief alone.

The balance of hardships weighs in Plaintiffs' favor since Empire has not identified any hardships for the Court to consider. Finally, the public would stand to gain from the issuance of a permanent injunction. The Second Circuit in Salinger stated that the "object of copyright law is to promote the store of knowledge available to the public" and to the extent that goal is met by providing financial incentives, "the public's interest may well be already accounted for by the plaintiff's interest." Salinger, 607 F.3d at 82. Here, if Plaintiffs suffer financial losses due to Empire's infringement, and as a result produce fewer motion pictures, the public's "store of

knowledge" will be diminished.  Accordingly, I recommend that the Court enter a permanent injunction against Empire "from copying, reproducing, distributing, exhibiting, or performing, or otherwise infringing upon Plaintiffs' copyrights in . . . *Hounddog*, and from permitting, authorizing, or causing others to do so."  (Proposed Order at 2).

### 3.  Disposition of Infringing Articles

Pursuant to 17 U.S.C. § 503, Plaintiffs seek an order directing Empire to dispose of all copies of *Hounddog* and all other infringing materials in Empire's possession or control.  Under Section 503(b), the Court may order "the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced."  17 U.S.C. § 503(b).

A forfeiture order under Section 503(b) is an equitable remedy "issued under the broad powers vested in a trial judge."  Rogers v. Koons, 960 F.2d 301, 313 (2d Cir. 1992).  The standard for granting this request mirrors the standard for granting injunctive relief.  BMG Music v. Pena, No. 05 Civ. 2310 (RJD) (MDG), 2007 WL 2089367, at *6 (E.D.N.Y. July 19, 2007).  Forfeiture is especially appropriate where the defendant retains infringing items, and the Court seeks to prevent future infringement.  See, e.g., Peer Int'l Corp. v. Luna Records, Inc., 887 F. Supp. 560, 570 (S.D.N.Y. 1995) (order to destroy all infringing articles in defendant's possession necessary given defendant's retention of infringing articles); Basquiat v. Baghoomian, No. 90 Civ. 3853 (LJF), 1992 WL 125529, at *3 (S.D.N.Y. May 22, 1992) (granting order to destroy infringing items where, despite question over defendant's future ability to infringe, defendant defaulted and fled the country).  The Court refrains from granting this type of relief if it may

deprive the defendant of legitimate use of the items in question, or where it is clear that the defendant will abide by the court's order to cease infringing activity.  See, e.g., N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l, LLC, No. 06 Civ. 5158 (LTS) (MHD), 2010 WL 2158294, at *3 (S.D.N.Y. May 27, 2010) (impoundment and forfeiture of four hard drives excessive where significant portion of drives contained non-infringing works and where defendant ceased all distribution upon notice of infringement).

In this case, the Court should grant Plaintiffs' request for an order calling for the disposition of all infringing articles in Empire's possession or control.  As discussed above, see Part II.D.2, supra, Empire's continuing exploitation of *Hounddog* raises a significant risk of future copyright infringement.  The only remedy that can prevent such infringement is one requiring Empire to destroy copies of the film in its possession or control.  Moreover, Empire's conduct hardly suggests that it will refrain from infringing Plaintiffs' copyright in the future.  To the contrary, after receiving notice that its distribution rights were revoked, Empire appears to have continued promoting, distributing, and most importantly, profitting from Plaintiffs' work.  Further, a forfeiture order will not deprive Empire of any legitimate use of the motion picture, as any use of the film by Empire would likely constitute infringement.  Finally, by ignoring Plaintiffs' 2008 notice of revocation and defaulting in this action, Empire has raised significant concerns regarding its compliance with any injunction, thereby necessitating a forfeiture order in addition to injunctive relief.  See, e.g., Musical Prods., Inc. v. Roma's Record Corp., No. 05 Civ. 5903 (FB) (VVP), 2009 WL 3052630, at *8 (E.D.N.Y. Sep. 23, 2009) (forfeiture order warranted as defaulting defendants' disregard for plaintiffs' cease and desist letters raised concern over compliance with injunction).  Accordingly, I recommend that the Court direct Empire to "deliver

all copies of *Hounddog* and all other infringing materials in its possession and/or under its control, including all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which copies of *Hounddog* may be reproduced to Plaintiffs' counsel's offices." (Proposed Order at 2).

### 4. Attorneys' Fees and Costs

Because Empire's conduct constitutes willful infringement, the Court may award fees pursuant to 17 U.S.C. § 505 of the Copyright Act. See, e.g., Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999). The party seeking attorneys' fees must submit records that enable the Court to determine whether the fee is reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983); Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). The prevailing party should submit, for each attorney, contemporaneous billing records documenting the date, the hours expended, and the nature of the work done. See id.; N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). When determining the amount of attorneys' fees for copyright claims, courts consider: "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant, 603 F.3d at 144. Accordingly, Plaintiffs should be directed to submit an accounting of the fees requested, together with supporting documentation, within fourteen (14) days of any order adopting this Report and Recommendation.

## III.   CONCLUSION

For all of the foregoing reasons, I recommend that the Court award Plaintiffs $400,000 in compensatory damages plus interest at a rate of nine percent per annum, and issue a declaration that the Distribution Agreement is validly terminated.  I further recommend that the Court award Plaintiffs $150,000 in statutory damages, along with injunctive relief under 17 U.S.C. §§ 501-02. Lastly, for purposes of determining reasonable attorneys' fees and costs, Plaintiffs should be directed to submit an accounting of the fees requested and supporting documentation within fourteen (14) days of any order adopting this Report and Recommendation.  Plaintiffs have prepared an Order embodying this relief, and I recommend that the Court sign it.  (Dkt. No. 50-1).

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.

Any requests for an extension of time for filing objections must be directed to Judge Marrero.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) (citing

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) and Mario v. P & C Food Mkts., Inc., 313 F.3d

758, 766 (2d Cir. 2002)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: New York, New York
       September 15, 2011

                                            JAMES L. COTT
                                            United States Magistrate Judge

**Copies of this Report and Recommendation have been sent by ECF and by mail to the following:**

Brian D. Caplan
Caplan & Ross, LLP
270 Madison Avenue
13th Floor
New York, New York 10017

Jonathan James Ross
Caplan & Ross, LLP
270 Madison Avenue
13th Floor
New York, New York 10017

Eliot Fred Bloom
Law Offices of Eliot F. Bloom
114 Old Country Road, Suite 308
Mineola, NY 11501

Eric Parkinson
1428 Chester Street
Springdale, AR 72764

Hon. Victor Marrero